**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **T.W. and Z.W.**

**No. 21-0915** (Kanawha County 21-JA-194 and 21-JA-195)

**MEMORANDUM DECISION**

Petitioner Mother N.M., by counsel Kevin P. Davis, appeals the Circuit Court of Kanawha County's November 4, 2021, order terminating her parental rights to T.W. and Z.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Matthew Smith, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2021, Child Protective Services ("CPS") responded to a referral at petitioner's home. Upon arrival, the children's grandmother explained that petitioner had a "mental breakdown" while holding T.W., during which she "very suddenly began to scream, rock back and forth, yell about 'TJ' doing something to her, and hit herself in the head." The grandmother attempted to remove the child from petitioner, but petitioner began to squeeze the child "so tightly that he could not breathe." When the grandmother was eventually able to remove T.W. from petitioner, petitioner physically attacked the grandmother, after which the family called the police. While police were on the scene, petitioner punched her brother in the face and was arrested. The grandmother was able to show CPS video footage from her home security system to corroborate

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

these statements. CPS then spoke with several other members of the family who indicated that petitioner had untreated mental health issues, could not control her behavior, and was unable to provide for the children's basic needs. Accordingly, the DHHR alleged that petitioner abused and neglected the children.

According to a court summary from May of 2021, petitioner was referred for parenting and adult life skills services, but missed her first appointment because she overslept and then hung up when the provider contacted her. The provider called several times thereafter, but petitioner refused to answer. Petitioner also tested positive for marijuana on two drug screens and missed four additional screens. As such, petitioner's visitation with the children was suspended. It was also noted that during one visit, petitioner contacted the children's father by video call. The father's parental rights to other children had been terminated in an earlier proceeding, and petitioner was ordered to have no contact with him. When petitioner was informed that she could not contact the father during visits, "she cried on and off throughout the entire . . . visitation with the children."

In May of 2021, the circuit court held an adjudicatory hearing, during which the DHHR presented testimony from a CPS worker and petitioner. Ultimately, the court concluded that petitioner abused and neglected the children and adjudicated her as an abusing and neglecting parent. The court also ordered the DHHR to provide petitioner with domestic violence services, in addition to the parenting and adult life skills services already offered. Following the hearing, the court ordered petitioner to undergo a psychological evaluation. Thereafter, petitioner filed a motion for an improvement period.

During petitioner's psychological evaluation, she disclosed a history of domestic violence and substance abuse beginning when she was thirteen years old. Petitioner also denied the need for treatment and minimized the issues that led to the filing of the petition. The evaluator gave petitioner a provisional diagnosis of severe cannabis use disorder, unspecified depressive disorder, unspecified anxiety disorder, and mixed personality disorder traits. Ultimately, the evaluator concluded that petitioner's prognosis for improved parenting was "guarded," because of her "history of interpersonal dysfunction and domestic violence, history of legal involvement, emotional lability and anger dyscontrol, history of substance abuse and continued drug use despite CPS involvement, history of unstable housing, and current lack of independent housing." According to the evaluator, this prognosis meant "that there are significant problems in the case that could prevent the attainment of minimally adequate parenting, though it remains possible that these could be resolved."

In August of 2021, the DHHR filed a court summary indicating that petitioner "consistently tested positive for THC throughout this case." A provider reported that petitioner was residing with a friend and that the apartment "consistently smells of marijuana to the point that it makes the provider feel strange." The provider addressed this with petitioner, but she continually denied using drugs. The report also indicated that petitioner admitted to buying a solution she believed would help her pass drug screens and to buying marijuana while failing to pay her child support obligations. The summary also noted that petitioner "is compliant with her provider and with her mental health treatment." Finally, the DHHR noted that petitioner was not present at the most recent multidisciplinary team ("MDT") meeting. Based on the foregoing, the DHHR indicated that it, along with the guardian, recommended termination of petitioner's parental rights.

In August of 2021, the court held a dispositional hearing, during which a CPS worker testified to petitioner's participation during the proceedings. According to the witness, petitioner's drug use continued unabated throughout the proceedings. Specifically, the witness indicated that petitioner "tested positive for every single test thus far for extremely high levels of THC." The witness further testified to petitioner's admission to "buying solutions to clean out her system" in an attempt to pass her screens. According to the witness, petitioner was "regularly buying these solutions, she is regularly buying marihuana [sic]" yet she failed to pay her child support. The witness also asserted that petitioner lacked employment. Additionally, because of her failed screens, the witness explained that petitioner had only participated in one visit with the children. The witness also explained that petitioner had not fully participated in the services offered and demonstrated an insufficient motivation to achieve reunification with the children. That said, the witness acknowledged that petitioner was "compliant with mental health treatment since the beginning" of the case.

Petitioner testified and denied any drug use. She also explained that she "went to buy a detox" so that her "system would be clean and [she] could continue to take . . . drug screens and hopefully get . . . visitation back." Petitioner then clarified that she had been smoking marijuana, but had not been smoking it recently. The court questioned petitioner as her continued positive screens at times when petitioner claimed she was not abusing drugs, and petitioner admitted that she had no explanation for the positive screens in question. According to petitioner, she was going to school to increase her chances of employment, although she admitted that she had only started her education the week prior. Petitioner also claimed that she received certification for housing, though she had yet to obtain independent housing, and that she was employed as of the dispositional hearing. Finally, petitioner explained that she participated in therapy on a weekly basis.

The court then addressed petitioner's testimony, finding that it lacked credibility. The court found that petitioner continued to test positive for marijuana "at levels that are inconsistent with secondhand smoke" and, further, that petitioner had not introduced any evidence to support that theory. The court further found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because she had "not made meaningful efforts to rectify the circumstances that led to the filing of the petition." Finally, the court found that the children's best interests required termination of petitioner's parental rights. As such, the court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[2]The father's parental rights were also terminated. The permanency plan for the children is adoption in the current foster home.

3

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the court should have granted her motion for an improvement period. According to petitioner, "[s]he was considerably successful during the . . . [p]roceedings," though she admits that she "made purely speculative mistakes at the . . . end of the process and was punished severely." Petitioner argues that she demonstrated that she was likely to fully comply with an improvement period because she "had a job, a house, was going to school . . . , and was getting treatment." This argument, however, ignores substantial evidence below.

Specifically, the court was presented with testimony and records that demonstrated petitioner's willful refusal to comply with services during the proceedings and the negative impact her conduct had on the children. As outlined above, the DHHR established that petitioner failed every drug screen during the proceedings, with the exception of the screen for which petitioner admitted to using a solution to defeat the screen. Indeed, the evidence showed that petitioner's screens revealed "extremely high" levels of THC. Further exacerbating this issue was petitioner's refusal to acknowledge her continued substance abuse. Instead of addressing this issue, petitioner claimed that she took a "detox" to rid her body of THC and that she had not abused drugs for several months prior to the dispositional hearing. Petitioner further claimed that it was possible she failed her drug screens because of secondhand smoke and was clear that she had no explanation for the continued presence of THC in her screens. The court found this testimony lacked credibility or evidence in the record for support.

As this Court has explained,

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Petitioner's refusal to acknowledge her continued substance abuse resulted in making the problem untreatable, and we find no error in the circuit court's denial of her motion for an improvement period as a result. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period.").

Even more importantly, petitioner's continued positive screens resulted in her exercising only one visit with the children during the proceedings. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Here, petitioner demonstrated absolutely no interest in visiting the children. She was aware that her ability to visit the children was dependent on her providing clean drug screens, yet she continued to abuse drugs during the proceedings. In fact, petitioner admitted to purchasing marijuana and the costly solution to defeat the drug screens despite the fact that she was not making her ordered child support payments. Put plainly, petitioner chose to continue abusing drugs over visiting with or supporting the children. This completely undermines petitioner's argument on appeal that she "wants to be involved in the lives of the children." When given the chance to do just that, petitioner instead chose to continue her substance abuse and later lie about that conduct.

Ultimately, this evidence supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. While it may be true that petitioner attended therapy, obtained employment, was approved for housing assistance, and enrolled in education services, none of these facts is sufficient to overcome her willful refusal to simply cease abusing drugs in order to visit with the children and facilitate their return to her care. The circuit court based this finding on substantial evidence, and petitioner can cite to nothing in her defense other than her own self-serving testimony, which the court found lacked credibility. We decline to disturb this credibility determination on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

As we have explained,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 4, 2021, order is hereby affirmed.

Affirmed.

5

**ISSUED**: April 14, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment